UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBI JO VARGAS,

        Plaintiff,                          Hon. Ellen S. Carmody

v.

                                         Case No. 1:18-cv-246

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 35 years of age on her alleged disability onset date. (PageID.175). She successfully completed high school and worked previously as a phlebotomist and Certified Nurse Assistant. (PageID.49). Plaintiff applied for benefits on February 20, 2015, alleging that she had been disabled since December 5, 2013, due to lumbosacral spondylosis, degenerative arthropathy, and depression. (PageID.175-76, 200). Plaintiff's application was denied after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.87-173).

On April 28, 2017, Plaintiff appeared before ALJ Ronald Herman with testimony being offered by Plaintiff and a vocational expert. (PageID.55-85). In a written decision dated July 5, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.40-50). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.30-34). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the lumbar spine; (2) degenerative joint disease of the bilateral knees; and (3) major depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.42-44). With

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she requires a sit/stand option every 15-30 minutes; (2) she can occasionally bend, stoop, kneel, crouch, and crawl; (3) she should avoid workplace hazards such as unprotected heights and moving machinery; (4) she is limited to simple, routine, repetitive tasks in a work environment free of fast pace production with simple work-related decisions and few, if any, work place changes.  (PageID.44).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 57,500 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.75-79).  This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand

5

jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.          **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing and other statements, the administrative record contained less than 150 pages of medical treatment records. The ALJ described this evidence as follows:

> In terms of the claimant's alleged back issues, the record reflects consistent complaints regarding pain; however, repeated objective studies revealed no evidence of disc protrusion or significant disc bulging within the lumbar spine, and only moderate facet degenerative changes at L5/S1 and L3/L4 (Exhibits 1F, 3F, and 11F). In December 2013, the claimant treated with Panut Bhimalli, M.D., at Carson City Pain Management Center for her back issues, receiving the last of three rhizotomy injections into the lumbar facet joint space (Exhibit 3F).
>
> This treatment appears to have been successful because the claimant did not return to Dr. Bhimalli for five months when in May 2014, the doctor prescribed Norco. The following month, the claimant presented to Dr. Bhimalli complaining of low back pain and right hip pain. The doctor's physical examination demonstrated a normal gait. Dr. Bhimalli diagnosed facet syndrome and spondylosis, and administered a nerve block injection (Exhibit 3F).
>
> The claimant returned to Dr. Bhimalli in September 2014 reporting that the rhizotomy injections lasted only four months. She stated that her average pain level is rated on a pain scale with ten being the worse pain at a four, and the worse pain only at a seven. Dr. Bhimalli's physical examination showed mild tenderness over the lower lumbar spine with no facet tenderness or spasms, normal fine touch sensation, normal reflexes, and negative straight leg raise. Further, the claimant did not display any discomfort with internal or external rotation. The doctor prescribed a non-steroidal anti-inflammatory, recommended physical therapy evaluation, exercise, and weight loss (Exhibit 3F).

The following day, on September 18, 2014, the claimant presented to Sheila Gendich, M.D., a primary care physician, with complaints of low back pain and received a prescription for Norco. In November 2014, the claimant returned to Dr. Gendich for a refill of her Norco, and reported being in physical therapy, receiving rhizotomy injections every six months, and filing for disability. The record is not clear if Dr. Gendich provided any treatment in November (Exhibit 2F).

However, the claimant did return to Dr. Bhimalli in December 2014 for another lumbar epidural steroid injection and a prescription to restart Mobic, despite a physical examination showing only tenderness over the lumbosacral spinal column with no spasms, normal sensation, normal reflexes, and negative straight leg raise, as well as no discomfort with internal and external rotation (Exhibit 8F).

Again, there is a gap in the claimant's treatment for seven months, when the claimant returned to Dr. Bhimalli in June 2015 for another injection. At that time, her gait was normal, and she exhibited appropriate judgment and insight, as well as normal mood and affect (Exhibit 8F).

Two weeks later, she presented to Dr. Gendich to fill out disability papers for lumbar degeneration and pain. The doctor's physical examination revealed only positive lumbar tenderness and medial knee pain bilaterally (Exhibit 4F).

The claimant did not return to any physician regarding pain or issues with her knees for nine months, when she presented to Ionia Family Practice in April 2016 to establish care for her back pain. At that time, physician assistant, Marc Bush, PA-C, indicated on physical examination a normal gait with no abnormal findings. He diagnosed chronic pain syndrome, prescribed gabapentin, and ordered blood work. The claimant returned in one week to follow up on her laboratory studies that showed an elevated total cholesterol, and no other issues (Exhibit 6F).

On April 22, 2016, the claimant returned to Mr. Bush for results of a Holter monitor for heart palpitations. The report showed underlying sinus rhythm with episodes of sinus tachycardia with supraventricular and ventricular ectopy without symptomatology. Again, the claimant had a normal physical examination with a normal gait. Mr. Bush ordered an echocardiogram to further evaluate the claimant's complaints of palpitations, which was

completely normal. At the last documented appointment with Mr. Bush in May 2016, he noted a normal physical examination, discontinued the gabapentin, and prescribed Lyrica (Exhibits 6F and 7F).

This treatment appears to have been successful as the claimant did not see a physician for almost one year, when in April 2017 she returned to Dr. Gendich for bilateral back pain. Dr. Gendich noted the claimant as a new patient re-establishing care. The claimant reported taking only over- the-counter non-steroidal anti-inflammatories and extra strength Excedrin. The doctor's physical examination revealed the claimant's right hip as low and anteriorly rotated with lumbar subluxation and torsion, and forward rotation on the right anteriorly. Despite these findings, she did not prescribe any medication or treatment, but did request another MRI, which demonstrated no herniated nucleus pulposus, central canal stenosis, or nerve root impingement; but did reveal moderate facet arthropathy (Exhibit 11F).

The claimant testified that due to insurance coverage she needed to switch from Dr. Gendich to Mr. Bush, then she was able to go back to see Dr. Gendich. This, of course, does not explain the nine-month delay in seeing a physician between June 2015 and April 2016 or the almost one year lapse in treatment from May 2016 to April 2017. Giv[ing] the claimant the benefit of the doubt regarding her back issues, the undersigned finds that her chronic pain syndrome is adequately accommodated by limiting her to the sedentary exertional level that allows for a sit/stand option every fifteen to thirty minutes. Further, she could occasionally bend, stoop, kneel, crouch, and crawl. The claimant should avoid exposure workplace hazards, such as unprotected heights and moving machinery.

The claimant also alleged anxiety and depression as disabling; however, has never seen a mental health practitioner. In fact, the first time her anxiety appears in the record is in September 2014 at an office visit with Dr. Gendich when the claimant indicated that the Effexor was not working. Dr. Gendich diagnosed depression and anxiety and increased the dose of Effexor (Exhibit 2F). One year later, in Sept 2015, the claimant returned to Dr. Gendich and reported she needed a refill of the Effexor and would like Xanax for anxiety. Dr. Gendich refilled the Effexor only (Exhibit 4F).

While the claimant was treating with Mr. Bush, she never once mentioned any anxiety or depression issues. Further, Mr. Bush consistently reported the claimant as pleasant, in no acute distress,

> with good attention to hygiene and grooming with fair judgment and insight and normal mood and affect (Exhibits 6F and 7F).
>
> Moreover, when the claimant returned to Dr. Gendich in April 2017, although she did report taking Effexor, there is no indication that she had any complaints of anxiety or depression at that time (Exhibit 11F). Additionally, the claimant testified that her mental health issues are not as bad as they used to be.

(PageID.45-47).

## II. The ALJ Properly Assessed the Medical Opinion Evidence

On July 16, 2015, Dr. Sheila Gendich completed a brief form report regarding Plaintiff's ability to perform work activities. (PageID.318-20). The doctor checked boxes on the form suggesting that Plaintiff was far more limited than the ALJ determined. Plaintiff asserts that she is entitled to relief because the ALJ failed to afford controlling weight to Dr. Gendich's opinion. The Court is not persuaded.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d

232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not

required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

Dr. Gendich reported that during an 8-hour workday, Plaintiff can sit and stand/walk for less than two hours each. (PageID.318). The doctor reported that Plaintiff can rarely lift 10 pounds and can never lift more than 10 pounds. (PageID.318). The doctor reported that Plaintiff can rarely "reach over shoulder" and can never squat, crawl, or kneel. (PageID.318). The doctor also indicated that Plaintiff would: (1) be "non-productive 15% or more of the time"; (2) "need frequent and unscheduled breaks from work"; (3) "likely miss 3 or more days per month of work"; (4) "spend at least one hour per 8 hour period lying down"; and (5) "need to elevate his or her feet at or above waist-level for at least 30 minutes per 8 hour period." (PageID.318-20). While the doctor completed the check-box form provided by Plaintiff's attorney, she did not supplement the form with any narrative statement or specify the basis for her selections therein. (PageID.318-20).

First, the brief check-box form completed by Dr. Gendich is not entitled to any particular deference. *See, e.g., Pelak v. Commissioner of Social Security*, 2016 WL 6694477 at *7 (W.D. Mich., Nov. 15, 2016) ("ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation"); *Birgy v. Commissioner of Social Security*, 2017 WL 4081528 at *5 (W.D. Mich., Sept. 15, 2017) (same); *Dalton v. Commissioner of Social Security*, 2013 WL 1150711 at *5 n.3 (W.D. Mich., Mar. 19, 2013) (same).

Moreover, even if this check-box form is considered a medical opinion to which the treating physician applies, the result is the same as the ALJ's reasons for discounting such are supported by substantial evidence. The ALJ noted that there existed significant gaps in Plaintiff's treatment. *See, e.g., White v. Commissioner of Social Security*, 572 F.3d 272, 283-84 (6th Cir. 2009) (gaps in treatment inconsistent with claim of disability); *Freeman v. Commissioner of Social Security*, 2018 WL 2093620 at *9 (S.D. Ohio, May 7, 2018) (same). When Plaintiff did receive treatment, the results of examinations and objective testing fail to support the doctor's extreme opinions. (PageID.260, 265, 276-91, 329-31, 348-50, 372-76). In sum, the ALJ articulated sufficient reasons, supported by substantial evidence, to discount Dr. Gendich's opinion. Accordingly, this argument is rejcted.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: September 28, 2018      /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge